UNITED STATES DISTRICT COURT
MDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ASHLEY NICOLE ACOSTA,
o/b/o D.M.A.,

    Plaintiff,

v.                                              Case No.: 8:20-cv-2392-KKM-AAS

KILOLO KIJAKAZI,
Acting Commissioner,[1]
Social Security Administration,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Ashley Nicole Acosta, on behalf of her minor child, D.M.A., requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying D.M.A.'s claim for Child's Supplemental Security Income Disability Benefits (SSID) under the Social Security Act, 42 U.S.C. § 405(g). After reviewing the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the defendant in this suit. No further action needs to be taken to continue this suit because of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

pleadings, and the joint memorandum submitted by the parties, it is **RECOMMENDED** that the Commissioner's decision be **REMANDED**.

## I. PROCEDURAL HISTORY

On January 5, 2017, Ms. Acosta applied for SSID on behalf of her minor child, D.M.A., alleging a disability date beginning September 17, 2004. (Tr. 157–63). Disability examiners denied D.M.A.'s application. (Tr. 76). An ALJ held a hearing and on August 29, 2019, the ALJ issued a decision finding D.M.A. not disabled. (Tr. 12–67). The Appeals Council denied Ms. Acosta's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–6). Ms. Acosta now seeks review of the Commissioner's decision. (Doc. 1).

## II. DISABILITY EVALUATION FOR CHILDREN

An individual "under the age of 18 [is] consider[ed]...disabled if [the individual] ha[s] a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906; *see* 42 U.S.C. § 1382c(a)(3)(C)(i). When determining whether an individual under the age of eighteen is disabled, an ALJ must follow the three-step sequential inquiry in the Code of Federal Regulations (the

Regulations), determining whether (1) the claimant is engaging in substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; and (3) the impairment(s) meet, medically equal, or functionally equal the impairments in the Listings. 20 C.F.R. § 416.924; *see also Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278-79 (11th Cir. 2004) (explaining the three-step sequential evaluation process for children).

As for the analysis conducted at step three, an ALJ considers the combined effect of all medically determined impairments, even those that are not severe. 20 C.F.R. §§ 416.923, 416.924a(b)(4), 416.926a(a) and (c). The ALJ then looks to "objective criteria set forth in [the Regulations]" to determine whether the impairment(s) cause severe and marked limitations. *Shinn,* 391 F.3d at 1278. The Regulations contain the Listings "specifying almost every sort of [impairment] from which a person can suffer, sorted into general categories." *Id.* (citing 20 C.F.R. § 416.925(a)). Each listed impairment discusses the different limitations on the child's abilities that the impairment may impose. *Id.* (citing 20 C.F.R. § 416.925(a)).

Limitations appearing in the Listings "are considered 'marked and severe.'" *Id.* (citing 20 C.F.R. § 416.925(a)). Limitations resulting from a child's impairment(s) meet "the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment." *Id.*

Limitations resulting from a child's impairments medically equal "the Listings if the child's limitations 'are at least of equal medical significance to those of a listed impairment.'" *Id.* (quoting 20 C.F.R. § 416.926(a)(2)).

Even if the child's limitations do not medically equal the Listings, "the ALJ can still conclude that those limitations are 'functionally equivalent' to those in the Listings." *Id.* To make that determination, "the ALJ assesses the degree to which the child's limitations interfere with the child's normal life activities," using "six major domains of life[.]" *Id.* Those domains are:

> (i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for [one]self; and, (vi) Health and physical well-being.

20 C.F.R. § 416.926a(b)(1). "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked limitations in two of the domains [above], or an extreme limitation in one domain.'" *Shinn*, 391 F.3d at 1279 (alteration in original) (quoting 20 C.F.R. § 416.926a(d) and citing 20 C.F.R. § 416.925(a)).

### III. THE ALJ'S DECISION

The ALJ followed the required three-step sequential evaluation process for children. (Tr. 15–23). The ALJ determined D.M.A. was an adolescent on January 5, 2017, the date the disability application was filed, and on August

4

29, 2019, the date the ALJ issued his decision. (Tr. 16). At step one, the ALJ determined D.M.A. had not engaged in substantial gainful activity since the application date. (*Id*). At step two, the ALJ found D.M.A. suffered from these severe impairments: attention deficit hyperactivity disorder, oppositional defiant disorder, and learning disability. (*Id.*). Despite these findings, the ALJ determined D.M.A. did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). (Tr. 16–17).

At step three, the ALJ considered the combined effect of D.M.A.'s medically determined impairments, even those that were not considered severe. (Tr. 18). The ALJ then looked to objective criteria in the Regulations to determine whether D.M.A,'s impairments caused severe and marked limitations. (*Id.*). The ALJ concluded D.M.A. had these limitations in the six functional domains:

| DOMAIN: | LIMITATION: |
|---|---|
| Acquiring and Using Information | Less than Marked |
| Attending and Completing Tasks | Less than Marked |
| Interacting and Relating with Others | Marked |
| Moving About and Manipulating Objects | None |
| Caring for Yourself | Less than Marked |
| Health and Physical Well-Being | Less than Marked |

(*Id.*). Because D.M.A. did not have an extreme limitation in one domain or marked limitations in two domains, the ALJ found D.M.A. not disabled. (Tr. 23).

## IV. STANDARD OF REVIEW

The court reviews the Commissioner's final decision of disability under 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if...supported by 'substantial evidence.'" *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).

The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge*, 150 F.3d at 1322; *see also Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this court to reweigh the evidence; the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted). The decision

reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam); *see also Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020).

## V.   ANALYSIS

Ms. Acosta argues the ALJ failed to adequately evaluate D.M.A.'s functional domains of acquiring and using information, attending and completing tasks, and caring for himself. (Doc. 27, pp. 11–20). Specifically, Ms. Acosta argues the ALJ improperly evaluated and weighed the opinions of three of D.M.A.'s eight grade teachers—Tim Barlene, Katherine Pettit, and Mychana Snead. (*Id.*). In response, the Commissioner contends the ALJ weighed the record evidence and properly assessed D.M.A.'s functioning within all the domains. (*Id.* at pp. 20–31).

At step three of the disability analysis, the ALJ must determine whether the child's impairments functionally equal a listing by using six domains, including the three at issue: (1) acquiring and using information; (2) attending and completing tasks; and (3) caring for himself. *See* 20 C.F.R. § 416.926a(b)(1). When determining a child's function in the six domains, the ALJ should consider all evidence, including nonmedical evidence. *See id.* § 416.924a(a)

7

("[The ALJ] consider[s] all relevant information (i.e., evidence) in your case record. The evidence in your case record may include information from medical sources ... and nonmedical sources, such as your parents, teachers, and other people who know you."); *id.* § 416.929(a) ("In determining whether you are disabled, [the ALJ] consider[s] all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence, and other evidence.").

Mr. Barlene, D.M.A.'s eighth grade math teacher completed a teacher questionnaire and opined D.M.A.:

> had some difficulty playing cooperatively with others, using language appropriate and listener, taking turns in a conversation, interpreting meaning of facial expression, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas, everyday conversation; he had obvious problem in making and keeping friends, seeking attention appropriately, expressing anger appropriately, respecting/obeying adults in authority, and introducing and maintaining relevant and topics of conversation; he had serious problems in asking permission appropriately and following rules; he needed to be sent out for being disruptive in class; and he got easily distracted and his biggest problem was motivation.

(Tr. 450).

Ms. Pettit, D.M.A.'s eighth grade reading teacher, completed a teacher questionnaire and reported D.M.A. was absent for sixty-seven days, had twelve suspensions, and was tardy fifty-one times. (Tr. 443). Ms. Pettit also opined D.M.A.:

8

> had serious problems in handling frustration appropriately, using good judgment about personal safety and dangerous circumstances, identifying and appropriately asserting emotional needs, and knowing when to ask for help; he had serious problems in being patient when necessary, responding appropriately to changes in own mood, and using coping skills to meet daily demands of school environment; and he needed one-on-one attention at most times in the classroom, and he had difficulty with self-control and self-monitoring both in and out of the classroom.

(Tr. 444).

Ms. Snead, D.M.A.'s eighth grade language arts teacher, completed a teacher questionnaire and opined D.M.A. had serious problems in every activity in acquiring and using information – comprehending oral instructions, understanding school, and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions, expressing ideas in written form, learning new material, recalling and applying learned material, and applying problem solving skills in class discussions. (Tr. 456). Ms. Snead also opined D.M.A. had serious problems in focusing long enough to finish assigned activity or task, refocusing to task when necessary, carrying out single-step instructions, carrying out multi-step instructions, waiting to take turns, changing from one activity to another without being disruptive, organizing own things or school materials, completing class/homework assignments, completing work

9

accurately without careless mistakes, working without distracting self or others, and working at reasonable pace/finishing on time; and a serious problem paying attention when spoken to directly. (Tr. 457).

The ALJ gave these three teachers' opinions limited weight because D.M.A. was generally absent from school and several pages of each form appeared to be missing, allowing each teacher to comment only on two or three domains. (Tr. 23). The ALJ also gave these teachers' opinions limited weight because it was not clear what portion of the ratings related to D.M.A.'s impairments and which portions were attributable to the lack of attendance at school. (*Id.*).

Although Mr. Barlene, Ms. Pettit, and Ms. Snead are not "acceptable medical source[s]," SSR 06-03p requires that the ALJ consider evidence from non-medical sources such as teachers, school counselors, and social workers. SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006).[2] "Although the Eleventh Circuit has held that the ALJ need not specifically refer to every piece of evidence in the record, *Dyer v. Barnhart*, 395 F.3d. 1206, 1211 (11th Cir. 2005), the ALJ must explain the weight afforded to 'obviously probative exhibits.'"

---

[2] In *Figuera v. Comm'r of Soc. Sec.,* the Eleventh Circuit noted that SSR 06-03p "was rescinded by 82 Fed. Reg. 15,263 (Mar. 27, 2017)." 2020 WL 4185793, at *2 n. 3 (11th Cir. July 21, 2020). The federal register notice, however, states that the rescission of SSR 06-03p applies to claims filed on or after March 27, 2017. On January 5, 2017, Ms. Acosta applied for SSID on behalf of D.M.A. on January 5, 2017, alleging a disability date beginning September 17, 2004. (Tr. 157–63).

*McGruder v. Astrue*, No. 1:11-cv-0468-JSA, 2012 WL 5817938, *7 (N.D. Ga. Nov. 16, 2012) (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). "SSR 06-03p further clarifies that this requirement that an ALJ state the weight given to 'obviously probative exhibits' should generally apply to evidence from nonmedical sources such as teachers." *Id.* Information from other sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at *2.

In *McGruder*, the plaintiff, on behalf of the minor claimant, argued that the ALJ erred when he failed to apply the proper legal standards when evaluating the minor claimant's teacher questionnaires. *McGruder*, 2012 WL 5817938, at **6–8. The court agreed and remanded the decision to the Commissioner. *Id.* at *6–11. The court noted that although the ALJ does not have to apply to "other sources" the six factors used for evaluating medical opinions from "acceptable medical sources," the factors represent principles that can apply to the consideration of all opinions, including school records. *Id.* at *7 (citing 20 C.F.R. §§ 404.1527(d); 416.927(d)). These factors include: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) how much the source presents relevant evidence supporting an opinion; (4) how well the

11

source explains the opinion; (5) whether the source has a specialty area of expertise related to the individual's impairment(s); and (6) any other factors that support or refute the opinion. *Id.* (citing SSR 06-03p, 2006 WL 2329939).

The court in *McGruder* found the ALJ's opinion was not detailed enough for the court to determine whether the ALJ evaluated the teacher questionnaires under the factors in SSR 06-03p. *Id.* at *6. The court found that remand was required because "the ALJ's minimal discussion of the teacher questionnaires did not sufficiently explain the weight he placed on those important pieces of evidence, how he considered them, and how they fit into his ultimate determination." *Id.* at *8. Thus, the court found it was impossible to determine whether the ALJ's decision was support by substantial evidence and remanded the case to the Commissioner. *Id.* at *11.

Here, unlike *McGruder*, the ALJ discussed D.M.A.'s teachers' opinions. (Tr. 23). However, the ALJ gave those teachers' opinions limited weight because several pages of each form appeared to be missing, which limited the teachers' available comments as to each domain. (*Id.*). In addition, the ALJ stated it was not clear what portion the teachers' opinions portions were attributable to D.M.A.'s lack of attendance at school. (*Id.*). However, the testimony and evidence indicates D.M.A's mental impairments and behavior issues led at least in large part to a negative impact on his ability to perform

12

and participate while at school.[3] (*See* Tr. 17–23, 40–41, 43–54). Indeed, throughout the relevant period, D.M.A. required educational and behavioral supports, and he continued to struggle with academics and behavior issues. (*See* Tr. 239–68, 299–309, 403–05, 410–19, 439).

Because the ALJ appeared to be missing portions of the teachers' opinions and the record may support greater limitations in at least two functional domains, the undersigned cannot determine whether the ALJ's finding that D.M.A. has less than marked limitations in acquiring and using information and attending and completing tasks was supported by substantial evidence.

## VI.  CONCLUSION

The undersigned thus recommends the ALJ's decision be reversed and remanded for the ALJ to reevaluate the opinions of Mr. Barlene, Ms. Pettit, and Ms. Snead in their entirety.

---

[3] A "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). In determining whether a child has a marked or extreme limitation in a domain, the ALJ considers how the child performs in a supportive setting and with medication. 20 C.F.R. § 416.926a(a). The regulations explain that school-age children in this domain should be independent in day-to-day activities, but may need to be reminded to do them routinely, should recognize their strengths and weaknesses in different activities, should be able to identify circumstances causing good and bad feelings about themselves, should develop a sense of right and wrong and of acceptable and unacceptable behavior, should demonstrate consistent control over their behavior, and should avoid behaviors unsafe or otherwise not good. 20 C.F.R. § 416.926a(k).

**ENTERED** in Tampa, Florida on April 1, 2022.

_____
AMANDA ARNOLD SANSONE
United States Magistrate Judge

## NOTICE TO PARTIES

The parties have fourteen days from the date they are served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1. A party's failure to object timely in accordance with 28 U.S.C. § 636(b)(1) waives that party's right to challenge on appeal the district court's order adopting this report's unobjected-to factual findings and legal conclusions. 11th Cir. R. 3-1.

14