## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ASHLEY NICOLE ACOSTA,
on behalf of D.M.A,

      Plaintiff,

v.                                  Case No: 8:20-cv-2392-KKM-AAS

KILOLO KIJAKAZI, Acting Commissioner,
Social Security Administration,

      Defendant.
_____

## ORDER

Ashley Acosta filed a claim with the Social Security Administration (SSA) seeking disability benefits on behalf of her adolescent child, who she claimed was disabled. An administrative law judge (ALJ) denied her benefits, and she seeks review of that decision. Because she fails to show any error by the ALJ requiring reversal or remand for reconsideration, the Court affirms SSA's decision.

## I.    BACKGROUND

### A. Procedural Background

On January 5, 2017, Acosta filed a claim for Supplemental Security Income on behalf of her adolescent child, D.M.A. (Doc. 20-2 at 16.) Acosta alleged that her child's

disability began on September 17, 2004. (*Id.*) After the claim was initially denied on February 24, 2017, Acosta requested and received a hearing from an ALJ on August 29, 2019, where she and her child were represented by counsel. (*Id.*)

The ALJ issued an order denying the requested benefits. (*Id.* at 13, 24.) The ALJ concluded that D.M.A. had a "marked," but not extreme, limitation in "interacting and relating with others." (Doc. 20-2 at 21.) The ALJ further concluded that D.M.A. had "less than marked" limitations in health and physical well-being, in acquiring and using information, attending and completing tasks, and caring for self. (*Id.* at 21–22.) Finally, the ALJ concluded that D.M.A. had "no limitation in moving about and manipulating objects." (*Id.* at 22.) In making these conclusions, the ALJ relied on school records regarding D.M.A.'s educational development—including test scores—Acosta's and D.M.A.'s testimony, and psychologists' notes. (*Id.* at 21–23.) The ALJ also considered but gave only "limited weight" to the questionnaires completed by three of D.M.A.'s teachers because D.M.A. had been frequently absent from school, several of the pages from each questionnaire appeared to be missing, the first page of each of the forms appeared to have been duplicated, and it was unclear whether the concerns that the teachers listed were caused by D.M.A.'s impairments or D.M.A.'s absences from school. (*Id.* at 23–24.)

Acosta exhausted her administrative remedies when she requested review of the ALJ's decision from the Appeals Council of SSA and it denied her request. (Doc. 20-2 at

2; Doc. 27 at 2.) She then brought her Complaint in this Court, seeking review of the ALJ's decision. (Doc. 1.) Acosta and the Commissioner of SSA filed their Joint Memorandum on December 2, 2021. (Doc. 27.) The Court referred the Joint Memorandum to the Magistrate Judge, who recommends that the Court reverse the ALJ's decision and remand the matter for the ALJ to develop the record with any missing portions of the teachers' opinions and then to reevaluate in the light of that evidence. (Doc. 28 at 13.) The Commissioner objects. (Doc. 31.)

### B. Statutory and Regulatory Background

Acosta sought benefits for her adolescent child who, according to Acosta, was disabled. An individual under the age of eighteen may be eligible for disability benefits through SSA if the individual "has a medically determinable physical or mental impairment[] which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906; *see Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004).

The Commissioner uses a three-step process to determine whether a child is "disabled." *See Shinn*, 391 F.3d at 1278. First, the ALJ determines whether the child is "doing substantial gainful activity." If the child is, the Commissioner "will determine that [the child is] not disabled." § 416.924(a). Second, if the child is not engaged in "substantial gainful activity," the Commissioner will "consider [the child's] physical or mental

3

impairment(s) first to see if [the child] ha[s] an impairment or combination of impairments that is severe." *Id.* If the impairment is not severe, the Commissioner will conclude the child is not "disabled." *Id.* Third, if the impairment is severe, the Commissioner will determine whether the child has an impairment that causes him to suffer "marked and severe functional limitations." § 416.924(d). A claimant can demonstrate "marked and severe functional limitations" by showing that the child's impairment causes specifically delineated medical problems. These medical problems are set forth in the "Listing of Impairments." *Shinn*, 391 F.3d at 1278; *see* § 416.924(d). If the child does not suffer a medical problem in the Listing, he can also be considered "disabled" if his impairment causes him to suffer "marked and severe limitations" that "functionally equal the listings." § 416.924(d).

The ALJ concluded that D.M.A. was not "engaged in substantial gainful activity" and that D.M.A. had a severe impairment. (Doc. 20-2 at 17.) But he concluded that D.M.A.'s impairment did not cause D.M.A. to suffer "marked and severe functional limitations," either by suffering an impairment on the Listing or by suffering from limitations that functionally equal an impairment on the Listing. (Doc. 20-2 at 17–18.) In the Joint Memorandum, Acosta contends only that the ALJ was wrong to conclude that D.M.A.'s impairment did not cause D.M.A. to suffer "marked and severe limitations" that

"functionally equal the listings." (Doc. 27 at 12.) Accordingly, the Court considers only that issue.

To determine whether a child's impairments functionally equal an impairment on the Listing, an ALJ looks to "the degree to which the child's limitations interfere with the child's normal life activities." *Shinn*, 391 F.3d at 1279. That inquiry requires the ALJ to consider six "domains of life." *Id.*; § 416.926a(b)(1). If the child has an "extreme" limitation in one domain, or a "marked" limitation in two or more domains, the ALJ must conclude that the child is "disabled." § 416.926a(a). The six domains include the child's ability to (1) acquire and use information, (2) attend and complete tasks, (3) interact and relate with others, (4) move about and manipulate objects, (5) care for himself, and (6) the child's "[h]ealth and physical well-being." § 416.926a(b)(1).

A child has a "marked" limitation when his impairment "interferes seriously with [his] ability to independently initiate, sustain, or complete activities." § 416.926a(e)(2)(i); *accord Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 499 (11th Cir. 2021). A child might suffer a marked limitation when his limitation is "'more than moderate' but 'less than extreme.'" § 416.926a(e)(2)(i).

## II.   LEGAL STANDARD

When reviewing an agency's decision to grant or deny benefits, the Court reviews the agency's legal conclusions de novo. *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496

5

F.3d 1253, 1260 (11th Cir. 2007). But the Court reviews the agency's factual findings with deference and affirms the decision if it was "supported by substantial evidence." *Id.* (quotation omitted); *see* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998) (quotation omitted). That evidence is "more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted). Thus, even if most of the evidence is against the ALJ's decision, the Court must affirm if substantial evidence supports the ALJ's determination. *See id.* The Court may not "reweigh the evidence[] or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted). In explaining his decision, an ALJ must provide enough analysis of the evidence to show the reviewing court that the "[ALJ] considered [the claimant's] medical condition as a whole." *Dyer*, 395 F.3d at 1210 (quotation omitted) (first alteration in original); *see also* 20 § 416.927(f)(2) (requiring that the ALJ provide a sufficient explanation to permit a reviewing court to "follow the adjudicator's reasoning").

After review of a magistrate judge's report and recommendation, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendation made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see* Fed. R. Civ. P. 72(b). The court must review anew any portion of the recommendation to which a party files a timely and specific

objection. *See* § 636(b)(1)(C). The district court must review legal conclusions de novo,

regardless of objections. *See Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir.

1994) (per curiam); *Ashworth v. Glades Cnty. Bd. of Cnty. Comm'rs*, 379 F. Supp. 3d

1244, 1246 (M.D. Fla. 2019) (Steele, J.).

## III.   ANALYSIS

Acosta presses for reversal or remand to SSA on three grounds. First, she argues

that the ALJ improperly weighed D.M.A.'s teachers' questionnaires. (Doc. 27 at 12.)

Second, she contends that the ALJ failed to sufficiently develop the record. (*Id.*) And third,

she contends that the ALJ's conclusions were not supported by substantial evidence. (*Id.*

at 18–19.) The Magistrate Judge agrees with Acosta's first two arguments and recommends

a remand for the ALJ to reevaluate the teachers' questionnaires. I respectfully disagree. I

lack authority to reweigh the teachers' questionnaires and Acosta fails to show that the ALJ

did not sufficiently develop the record. Moreover, I disagree with Acosta's third argument;

the ALJ had substantial evidence for the conclusions that Acosta disputes.

### A. The Court Lacks Authority to Reweigh the Evidence

Acosta first argues that the ALJ "failed to properly evaluate all of the evidence which

indicated at least marked limitations in these domains." (*Id.* at 12.) Specifically, she

contends that the ALJ gave too little weight to questionnaires supplied by D.M.A.'s

teachers. (*Id.* at 13, 15.) Although an ALJ must give substantial weight to the "medical

opinions of treating physicians," *Winschel*, 631 F.3d at 1179, the ALJ is not required to assign evidence from non-medical sources "any particular weight." *Farnsworth v. Soc. Sec. Admin.*, 636 F. App'x 776, 784–85 (11th Cir. 2016) (per curiam); *see Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014) (per curiam) (concluding that the ALJ had "good cause to disregard" a student therapist's assessment because she was not an "acceptable medical source"); *see also Holland on behalf of West v. Comm'r of Soc. Sec.*, 842 F. App'x 344, 349 (11th Cir. 2021) (per curiam) (holding that the ALJ was not required to give a "detailed accounting" of the evidence within school records). Thus, to the extent Acosta argues that the ALJ improperly gave the teachers' opinions too little weight, the argument lacks merit. The ALJ had no obligation to give the evidence a particular weight and the court lacks authority to reweigh the evidence. *See Winschel*, 631 F.3d at 1178. To the extent that Acosta argues that the ALJ did not consider the evidence, that argument is flatly contradicted by the ALJ's opinion, wherein he explained why he found the teachers' questionnaires to be of limited probative value. (Doc. 20-2 at 23–24.)

### B. The ALJ Sufficiently Developed the Record

As an inquisitorial rather than adversarial court, ALJs "generally ha[ve] an obligation to develop the record." *Ingram*, 496 F.3d at 1269; *accord Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). This duty ensures that the claimant receive a "full and fair hearing." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985). An ALJ fails to

8

develop the record when the record lacks "sufficient evidence for the administrative law judge to make an informed decision." *Ingram*, 496 F.3d at 1269. But even if the record development was imperfect, remand of the ALJ's decision is not appropriate unless the plaintiff demonstrates that the imperfection caused prejudice. *See Kelley*, 761 F.2d at 1540 (noting that the claimant's hearing was "less than totally satisfactory" but concluding that the claimant suffered no prejudice and therefore remand was unwarranted).

To show prejudice, a plaintiff must demonstrate that "the ALJ did not have all of the relevant evidence before him in the record . . . [or] did not consider all of the evidence in the record in reaching his decision." *Id.*; *see also Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 871 (11th Cir. 2016) (per curiam) (holding that the plaintiff bears the burden of showing that the ALJ lacked relevant evidence or failed to consider all the evidence); *Thomas v. Comm'r of Soc. Sec.*, 841 F. App'x 128, 131 (11th Cir. 2020) (per curiam) (holding that the plaintiff "made no such showing" of prejudice). A plaintiff is not prejudiced by a record that was not fully developed if the record still provided "sufficient evidence" for the ALJ "to make an informed decision." *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 749 (11th Cir. 2018) (per curiam) (quoting *Ingram*, 496 F.3d at 1269). And a plaintiff does not carry his burden to show prejudice when he fails to point to some evidence that the ALJ failed to obtain which would support his claim. *See Kelley*, 761 F.2d at 1540 ("The assertion that appellant might have benefited from a more extensive hearing

is pure speculation."); *Townsend v. Comm'r of Soc. Sec.*, 555 F. App'x 888, 891–92 (11th Cir. 2014) (per curiam) (concluding that the plaintiff failed to show prejudice because the additional evidence would not have been "helpful or credible" and because she failed to offer what the "ALJ might have learned" from the additional evidence).

Acosta argues that the ALJ failed to develop the record and that the Court should remand for further development of the record. Specifically, she contends that the ALJ failed to obtain the missing pages from the teachers' questionnaires and to obtain clarification from the teachers about whether their assessments of D.M.A.'s challenges in school were based on D.M.A.'s impairment or D.M.A.'s absences from school. But her argument fails for two reasons. First, the record was sufficient for the ALJ to make an informed decision. *See Brock*, 758 F. App'x at 749. And second, Acosta offers nothing more than speculation that evidence could be obtained that would be relevant to her claim. *See Kelley*, 761 F.2d at 1540. As such, even if the ALJ's record development fell short of perfection, Acosta fails to show prejudice. Therefore, Acosta's failure-to-develop claim fails.

First, the ALJ had a sufficient record to make an informed decision. An ALJ has a sufficient record to make an informed decision when the record consists of "two years of notes from [the child's] treating physician, as well as a [report describing the child's functional capabilities completed by his mother], school records, and the opinions of two

State agency medical consultants." *Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 714 (11th Cir. 2017) (per curiam). The ALJ possessed a more robust record in this case, with the testimony of both Acosta and D.M.A., a psychologist's opinion, opinions (albeit incomplete) from three teachers, treatment records from two pediatric centers, and educational records for multiple years. (Doc. 27 at 3–11). The ALJ had sufficient evidence to make an informed decision. *See Brock*, 758 F. App'x at 749; *see also Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001) (concluding that two medical opinions and the plaintiff's testimony was sufficient evidence to "support[] the ALJ's conclusion"); *Sarria*, 579 F. App'x at 724 (concluding that "medical records, the reports of [the plaintiff's] treating psychiatrists and therapists, the assessments of agency physicians, and [the plaintiff's] self-assessments" were sufficient).

Second, Acosta fails to point to any evidence that the ALJ failed to obtain that would support her claim. *See Kelley*, 761 F.2d at 1540. She need not provide the evidence to the Court, so long as the existence of supporting evidence is not speculative. *See Brown v. Shalala*, 44 F.3d 931, 935–36 (11th Cir. 1995) (assuming for purposes of the decision that medical records that the plaintiff alleges show she had an impairment would support the plaintiff's claim). But if she offers only evidence that she contends would likely support her position, the evidence is too speculative to show that the ALJ prejudiced her by failing to develop the record. *See Kelley*, 761 F.2d at 1540; *Mosley v. Acting Comm'r of Soc. Sec.*

*Admin.*, 633 F. App'x 739, 743 (11th Cir. 2015) (per curiam) (holding that the plaintiff's suggestion that an I.Q. test would "likely" support her claim was nothing more than "her own speculation" and insufficient to show prejudice); *Thomas*, 841 F. App'x at 131 (holding insufficient the plaintiff's argument that, had an expert been "properly questioned," he would have given an answer that "in all likelihood" would have favored the plaintiff).

Instead of pointing to evidence the ALJ should have considered, Acosta conjectures that the ALJ might have given the teachers' questionnaires greater weight if he had contacted the teachers and asked them to supply the missing pages and to explain what portions of their ratings were due to D.M.A.'s absences from school and what portions were due to D.M.A.'s impairment. (Doc. 27 at 17.) Acosta does not allege that the missing pages would be helpful to her claim or ground that kind of allegation with reasons to believe it would be. *See Townsend*, 555 F. App'x at 892 (concluding there was no prejudice, in part, because the plaintiff failed to indicate how the additional evidence would be relevant). The missing pages might support Acosta's claim, but they might just as well support the ALJ's conclusions or could fail to offer insight on the question altogether. *Cf. Mosley*, 633 F. App'x at 743–44 (concluding that the existence of relevant evidence was speculative because other evidence suggested that the potential evidence did not exist). Acosta fails to give any reason to think that any one of these possibilities is more likely than the others,

rendering her argument that the pages would be relevant and helpful to her claim speculation. *See Thomas*, 841 F. App'x at 131 (holding a plaintiff's "conclusory speculations" to be insufficient to show prejudice). Thus, Acosta fails to show that the ALJ's failure to obtain the missing pages or to inquire further of the teachers prejudiced her. *See Kelley*, 761 F.2d at 1540.

Nor does she provide any reason to think that the teachers would attribute D.M.A.'s challenges in school to a medical impairment. The fact that Acosta believes it likely that the teachers would attribute the difficulties to D.M.A.'s medical impairment is not enough to show that the ALJ's failure to interview the teachers prejudiced Acosta. *See Mosley*, 633 F. App'x at 743; *Thomas*, 841 F. App'x at 131. Nor does her contention that D.M.A. testified that the absences were caused by the medical impairment provide her argument with the needed certainty. (Doc. 27 at 19.) It supplies only the reason that Acosta thinks it likely the teachers would attribute D.M.A.'s absences to the medical impairment. *Cf. Planas*, 842 F. App'x at 500 (noting that a child's school absences "may have been caused by the depression he suffered when he changed schools" rather than his medical conditions). And if the teachers would not attribute the absences to D.M.A.'s medical impairment, the ALJ's decision to afford limited probative weight to the questionnaires would only be reinforced. *See Townsend*, 555 F. App'x at 892 (holding that any lack of

record development was harmless because the additional evidence could have hurt the plaintiff's claim).

As such, Acosta offers no more than speculation that any potential failure from the ALJ to develop the record prejudiced her. *See Thomas*, 841 F. App'x at 131 (concluding that a plaintiff's argument that a properly questioned expert would have provided evidence in his favor was a "conclusory speculation" that did not show prejudice); *Pennington*, 652 F. App'x at 872 (holding that a plaintiff that speculated that he could have given answers in his testimony that would have helped him had the ALJ asked the correct questions failed to show prejudice when he "d[id] not actually offer such explanation or supporting evidence"). "[S]howing prejudice is no trivial matter." *Thomas*, 841 F. App'x at 131. Acosta fails to make that showing here.

### C. Substantial Evidence Supported the ALJ's Decision

Acosta argues that substantial evidence weighed against the ALJ's conclusions that D.M.A. lacked marked limitations in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being. The Commissioner rightly notes that whether substantial evidence weighed against the ALJ's conclusion is not the standard; instead, the inquiry is whether substantial evidence supported the ALJ's decision. *See Holland*, 842 F. App'x at 348 ("But the standard is not whether there is 'ample evidence' to support [the plaintiff's] argument; it is whether there is 'substantial

14

evidence' to support the ALJ's decision to the contrary."). And the ALJ's conclusions were supported by substantial evidence.

First, the ALJ had substantial evidence to conclude that D.M.A. did not suffer marked limitations in acquiring and using information. The ALJ first reviewed D.M.A.'s academic reports. He explained that, in 2015, D.M.A.'s academic achievement test scores and I.Q. scores in 2015 were "fully average." (Doc. 20-2 at 21.) The ALJ then noted that two years later, D.M.A.'s academic achievement tests indicated that D.M.A.'s reading was average and math was a strength for D.M.A. (Doc. 20-2 at 21–22.) These test scores are all probative of D.M.A.'s ability to acquire and use information and they all indicate that D.M.A. had less than "marked" limitations. *See Muhammad ex rel. T.I.M. v. Comm'r of Soc. Sec.*, 395 F. App'x 593, 601 (11th Cir. 2010) (per curiam) (concluding that standardized test scores supported the ALJ's conclusion that the claimant "had less-than-marked limitations in the domain of acquiring and using information"); *England v. Astrue*, 490 F.3d 1017, 1021 (8th Cir. 2007) (holding that I.Q. scores that were only somewhat below average support the ALJ's finding that the claimant lacked marked limitations in acquiring and using information). The ALJ continued by explaining that, the "committee on special education" decided in 2018 that D.M.A. did not need consultant teacher services for math and that D.M.A. could attend a general education class for reading. (Doc. 20-2

at 22.) This likewise indicates that D.M.A. had less than marked limitations in acquiring and using information.

Moreover, the ALJ did not rely solely on D.M.A.'s I.Q. scores and academic performance. He further explained that a psychologist found that D.M.A. suffered "no disorientation or memory impairment." (Doc. 20-2 at 22); *see* 20 C.F.R. § 416.926a(g)(3)(iii) (listing the inability to "recal[] important things [the child] learned in school" the day before as an indicator of limitations in this domain). The ALJ noted that D.M.A. "enjoy[ed] playing video games," (Doc. 20-2 at 22), an activity which "required him to respond to instructions and work through problems to achieve a specific goal," *Planas on behalf of A.P. v. Comm'r of Soc. Sec.*, 842 F. App'x 495, 500 (11th Cir. 2021); *see Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (relying in part on the fact that the claimant played video games to determine that he had less than marked limitations in acquiring and using information). Finally, the ALJ noted that a state agency's psychological consultant concluded that D.M.A. "ha[d] . . . no limitation in acquiring and using information." (Doc. 20-2 at 22); *see Parks*, 783 F.3d at 852 (noting that agency consultants' opinions that the child "had a less than 'marked' limitation in acquiring and using information" was probative evidence). Considering all this information together, a "reasonable mind might accept [the evidence] as adequate to

support [the ALJ's] conclusion" that D.M.A. had less than marked limitations in acquiring and using information. *Falge*, 150 F.3d at 1322 (quotation omitted).

The ALJ relied on the same evidence to conclude that D.M.A. lacked marked limitations in attending and completing tasks. Although some of that evidence was irrelevant to this domain, a reasonable mind might find the remaining evidence adequate to support the ALJ's conclusion. *See id.* Some of that evidence, particularly D.M.A.'s I.Q. score, is largely irrelevant to D.M.A.'s ability to focus on and complete tasks. Other evidence—namely, D.M.A.'s test scores—is less immediately relevant but nonetheless probative of whether D.M.A. had marked limitations in attending and completing tasks. Thus, a reasonable mind could view D.M.A.'s academic achievement scores as indicating that D.M.A. can focus on academic studies to some extent, as academic scores are often a result of whether an individual is capable of prolonged studying. *See id.*; *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("[W]e give great deference to the ALJ's factfindings."). Finally, some evidence is directly relevant and indicates that D.M.A. had less than marked limitations in this domain. The ALJ noted that D.M.A. plays video games, an activity that "required [the child] to respond to instructions and work through problems to achieve a specific goal." *Planas*, 842 F. App'x at 500; *see also Wood v. Soc. Sec. Admin., Comm'r*, 726 F. App'x 742, 744 (11th Cir. 2018) (per curiam) (implying that a plaintiff's ability to "watch[] television and play[] video games all day"

indicates that the plaintiff lacked "marked limitations in sustained concentration"). D.M.A.'s ability to work through problems to achieve a specific goal directly supports the ALJ's conclusion that D.M.A. did not suffer marked limitations in the ability to focus on a task. Finally, the ALJ noted that the state psychologist concluded that D.M.A. had less than marked limitations in attending to and completing tasks. (Doc. 20-2 at 22); *see Parks*, 783 F.3d at 852 (noting that agency consultants' opinions can be probative of a child's limitations). Taken together, a reasonable mind might conclude this evidence adequate to indicate that D.M.A. lacked a marked limitation in attending to and completing tasks. *See Falge*, 150 F.3d at 1322.

Finally, the ALJ concluded that D.M.A. had less than marked limitations in the domain of "health and physical well-being." This domain considers the "the cumulative physical effects of physical or mental impairments and their associated treatments or therapies" on the claimant's functioning, except for those effects on the claimant's "gross and fine motor skills." § 416.926a(l) (noting that this domain is limited to the effects on functions that were not "considered in paragraph (j)"); *accord Planas*, 842 F. App'x at 499. In support for his conclusion that D.M.A. had less than marked limitations in this domain, the ALJ noted that an examination of D.M.A. concluded that D.M.A. did not have "palpitations and shortness of breath." (Doc. 20-2 at 22 ("A Holter diary . . . noted [such problems], but a related examination was normal.")); *see* § 416.926a(l)(1) (listing

"shortness of breath" as an indicator of limitations in this domain). The ALJ also noted that D.M.A. regularly plays basketball, which suggests that D.M.A. likely does not suffer, or at least often suffer, "shortness of breath, reduced stamina, [or] fatigue." § 416.926a(l)(1) (listing these as effects that indicate limitations in this domain); (Doc. 20-2 at 22.) The ALJ relied on Acosta's testimony that D.M.A. "ha[d] not received any cardiac care" and the fact that D.M.A. had denied to the pediatrician having any headaches. (*Id.*); *see* § 416.926a(l)(4)(ii) (listing headaches as one example of evidence indicating limitations in this domain). The ALJ relied on the limited back pain that D.M.A. suffered, explaining that D.M.A. reported it only "bothered [DMA once] per week" and only "after long walks." (Doc. 20-2 at 22); *see* § 416.926a(l)(1) (listing "local or generalized pain" as an indicator of limitations in this domain). Finally, the ALJ noted that D.M.A. asks for help when needed and the state's psychological consultant concluded that D.M.A. "ha[d] no limitation" in health and physical well-being. (Doc. 20-2 at 22.) This evidence is enough that a "reasonable mind might accept as adequate to support [the ALJ's] conclusion" that D.M.A. did not suffer marked limitations in health and physical well-being. *Falge*, 150 F.3d at 1322 (quotation omitted).

## IV.   CONCLUSION

Acosta sued the Commissioner of Social Security, seeking reversal or remand of the ALJ's decision. (Doc. 27 at 30.) But Acosta has shown no error in the ALJ's decision that

requires remand. Accordingly, the Court **DECLINES TO ADOPT** the recommendation of the Magistrate Judge and **AFFIRMS** the decision of the ALJ. The Clerk is directed to enter judgment in favor of the Commissioner of Social Security, terminate any other pending motions, and deadlines and to close this case.

   **ORDERED** in Tampa, Florida, on July 10, 2022.

Kathryn Kimball Mizelle
United States District Judge